**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Shantrell TOLBERT, Defendant–
Appellant.**

No. 99–6007.

United States Court of Appeals,
Sixth Circuit.

March 29, 2001.

Before BOGGS and GILMAN, Circuit Judges; and BECKWITH,* District Judge.

BECKWITH, District Judge.

Defendant–Appellant Shantrell Tolbert appeals his conviction and sentence for carjacking in violation of 18 U.S.C. § 2119. On appeal, Appellant argues that: 1) his Fifth Amendment right to due process and Sixth Amendment right to a trial by jury were violated because the indictment failed to allege and the prosecution failed to prove the element of serious bodily injury; 2) the evidence of intent to cause death or serious bodily harm was insufficient to sustain a conviction for carjacking; 3) the trial court erred by admitting evidence of gang affiliation; and 4) the trial court erred by allowing lay witnesses to testify and/or refer to the incident as "the carjacking." For the reasons that follow, we AFFIRM Appellant's conviction for carjacking, but partially VACATE the sentence and REMAND the case for resentencing as to the term of supervised release.

I.

On April 28, 1994, Geory Summerow was driving his car through the streets of downtown Chattanooga, Tennessee searching for his brother. As he drove, Summerow spotted a group of six to ten young men in an alley. Among this group was the Appellant, Shantrell Tolbert, and two of his co-defendants, Thomas Freeman and James Murry. Summerow thought his brother might be with them, but, as he approached the group, realized that he was not, and became frightened. Summerow stated that in order to avoid an altercation, he asked Murry if he could purchase $15

---

* The Honorable Sandra S. Beckwith, United States District Judge for the Southern District of Ohio, sitting by designation.

worth of crack cocaine. Murry walked over to the driver's side of the car to take the money. When he reached Summerow, Murry produced a 9mm pistol and said "Brace yourself, fool, put your hands in the air."

At the same time, Appellant pulled out either a .22 caliber pistol or a .25 caliber pistol, yanked Summerow from the car and pushed him face-down onto the ground. Meanwhile, Freeman brandished a .380 caliber handgun. While Murry was rummaging through the car looking for things to steal, Appellant pulled down Summerow's pants and underwear and made him bark like a dog. The trio ended up taking Summerow's shoes and the car radio. Murry then forced Summerow into the trunk of the car at gunpoint. At that point Murry told Appellant and Freeman to take the car around the corner and leave it there. Murry then apparently departed the scene. However, rather than abandon the car, Freeman and Appellant drove around Chattanooga with Summerow in the trunk, eventually arriving at the house of co-defendant Calvin Yearby. Freeman and Appellant asked Yearby to drive them to Cleveland, Tennessee, about thirty miles north of Chattanooga, because they did not know how to get there. As they drove north on Interstate 75, Appellant taunted Summerow through the back seat of the car and repeatedly asked Summerow how he wanted to die.

When they reached Cleveland, Appellant and his cohorts visited Tonya Greathouse at her apartment for approximately fifteen to twenty minutes. They then drove to a wooded, secluded area about one block from Greathouse's apartment. There, Appellant and Freeman pulled Summerow from the trunk at gunpoint and blindfolded him with a blue bandana. Appellant and Freeman marched Summerow further into the woods and shot him

seven times. They then kicked Summerow into a ditch, leaving him there to die, and began the return trip to Chattanooga. Miraculously, after being momentarily incapacitated, Summerow was able to stagger to a nearby residence, where he called the police and summoned medical attention. The police began a high-speed pursuit of the carjackers down Interstate 75. The carjackers eventually abandoned the car at a police roadblock. Freeman and Yearby surrendered after a brief foot chase. A SWAT team apprehended Appellant in a nearby residential area. Summerow was initially treated in Cleveland and then flown to a hospital in Chattanooga for surgery. Summerow survived, but doctors had to remove a part of his pancreas and insert chest tubes to re-inflate his collapsed lungs. Appellant was age 17 at the time of the offense.

Appellant was initially bound over to the Juvenile Detention Unit for Hamilton County, Tennessee. However, upon motion by the United States, the case was transferred to federal court pursuant to 18 U.S.C. § 5032 so that Appellant could be tried as an adult. On August 12, 1994, the grand jury handed down a three-count indictment charging Appellant, Freeman, Yearby, and Murry with conspiracy to commit carjacking in violation of 18 U.S.C. § 371, carjacking in violation of 18 U.S.C. § 2119, and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). The grand jury then handed down a superseding indictment that was apparently issued because Murry's name was misspelled in the original indictment, but was in all other respects identical to the original indictment. Specifically, with respect to Count Two, the superseding indictment charged that:

[O]n or about April 19, 1994, in the Eastern District of Tennessee, SHANTRELL TOLBERT, THOMAS FLOYD

FREEMAN, CALVIN DeWAYNE YEARBY, and JAMES MURRY, defendants herein, each aided and abetted by each other, did take and attempt to take a motor vehicle, that is, a 1979 Oldsmobile Cutlass, that had been shipped in interstate commerce, from the person and presence of Geory Summerow, by force and violence and by intimidation, while possessing firearms as defined in 18 U.S.C. § 921, that is a .380–caliber pistol and a .22–caliber pistol. [18 U.S.C. §§ 2119 and 2]

The superseding indictment did not further elaborate as to whether Appellant was charged under subsection (1) of § 2119 or subsection (2).[1]

Freeman pled guilty to Counts Two and Three and Yearby entered a guilty plea to Count Two. The charges against Appellant and Murry were tried to a jury during September 1995. During trial and without objection from Appellant's trial counsel, the prosecution elicited testimony from a number of witnesses that blue bandanas in the possession of Appellant, Freeman, and Yearby signified membership in the notorious street gang the Crips. Furthermore, during closing arguments, the Assistant United States Attorney (AUSA) stated, also without objection:

> [Tolbert's] got this blue bandana and we all know what that means now. It means the Crips, what you have is gang activity in this case. And it's serious.

In addition to eliciting evidence of gang affiliation, during the course of the trial and when questioning witnesses, the AUSA referred to the robbery and theft of Summerow's car as "the carjacking." Other witnesses referred to the incident as "the carjacking" and another witness. Adrian Patton, who was present in the alley but not charged, described what happened while Appellant, Murry, and Freeman were "jacking" Summerow. These statements were made without objection from Appellant's trial counsel. On September 15, 1995, the jury returned verdicts convicting Appellant on all three counts of the superseding indictment.

There was no specific finding by the jury that Summerow suffered "serious bodily injury," as that term is used in § 2119(2), during the commission of offense, nor was the jury given an instruction on "serious bodily injury." The presentence investigation report (PSI), however, proceeded on the assumption that Appellant had been convicted under subsection (2), which, because of the penalty, is a Class B felony. Grouping Counts One and Two together and applying § 2B3.1 of the United States Sentencing Guidelines, the PSI started with a base offense level of 20. Appellant then received a two-level enhancement because the offense involved carjacking, a six-level enhancement because Summerow received permanent or life-threatening injuries, and a four-level enhancement because Summerow was abducted

---

1. The carjacking statute in effect at the time of the offense provided:

   Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

   (1) be fined under this title or imprisoned not more than 15 years, or both,

   (2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

   (3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

   18 U.S.C. § 2119 (West 1993).

to facilitate the commission of the offense. Because of the § 924(c) conviction, Appellant avoided a seven-level enhancement for discharge of a firearm. The final offense level was 32, and, coupled with a criminal history category of I, gave Appellant a sentencing range of 121 to 151 months. By statute, the sentence for the § 924(c) conviction, which carries with it a mandatory 60–month term of imprisonment, was required to be served consecutively to the conspiracy and carjacking charges. Therefore, Appellant was exposed to a total sentencing range of 181 to 211 months of imprisonment.

On November 20, 1995, the district judge sentenced Appellant to 151 months of imprisonment on Counts One and Two, to be served concurrently, and 60 months of imprisonment on Count Three to be served consecutively to Counts One and Two. In addition, the district judge sentenced Appellant to three years of supervised released on Counts One and Three and five years of supervised release on Count Two, to run concurrently. The district judge waived any fine but ordered Appellant to pay $2,000 in restitution for damage to Summerow's car.

Following imposition of sentence, Appellant failed to file a timely notice of appeal. However, on July 13, 1999, the district court granted Appellant relief pursuant to 28 U.S.C. § 2255, finding that trial counsel's failure to file a notice of appeal when so requested was a violation of Appellant's Sixth Amendment right to effective assistance of counsel. Following the district court's grant of relief, Appellant filed a timely notice of appeal. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

We address Appellant's assignments of error somewhat out of order since his argument regarding the sufficiency of the evidence is potentially dispositive of the remainder of his claims.

■ Appellant claims that the evidence was insufficient to sustain his conviction for carjacking. Specifically, Appellant argues that the evidence was insufficient to prove beyond a reasonable doubt that he intended to cause death or serious bodily harm at the time he took possession of Summerow's car. Normally, for an insufficiency of the evidence claim, we review the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 309, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir.1994). However, Appellant's argument overlooks the fact that he was indicted and tried under the version of § 2119 in effect in April 1994. That version of the statute did not make it an offense to take a car with intent to cause death or serious bodily harm. Rather, at the time, § 2119 made it an offense to take a car "while possessing a firearm as defined in section 921." *See* 18 U.S.C. § 2119 (West 1993). In September 1994, Congress amended § 2119 by deleting the phrase "while possessing a firearm as defined in section 921" and inserting the phrase "with the intent to cause death or serious bodily harm." *See* Pub.L. 103–322, Tit. VI, § 60003(a)(14), Sept. 13, 1994, 108 Stat. 1970. Thus, the prosecution was not required to prove the element of "intent to cause death or serious bodily harm" in order to secure a conviction for carjacking under § 2119 at the time of Appellant's trial. Indeed, retroactive application of the amended version of § 2119 might have run afoul of the Ex Post Facto Clause of the Constitution because, for example, at the time of Appellant's offense, a person using a knife could have taken a car while intending to inflict death or serious bodily

harm without violating § 2119. *See Kellogg v. Shoemaker*, 46 F.3d 503, 509 (6th Cir.1995) ("[I]t is a fundamental principle of ex post facto jurisprudence that a court entertaining an ex post facto claim must focus upon the law in effect at the time of the offense for which a person is being punished.") (citing *Rodriguez v. United States Parole Comm'n*, 594 F.2d 170, 176 (7th Cir.1979)).

█ Appellant next contends that his Fifth Amendment right to due process was violated because, although he was sentenced for a violation of 18 U.S.C. § 2119(2), the superseding indictment failed to allege that "serious bodily injury" resulted from the offense. Appellant similarly argues that his Sixth Amendment right to a trial by jury was violated because the prosecution was not required to prove the element of "serious bodily injury" beyond a reasonable doubt.

We note that Appellant's conviction and sentence came at a time when most courts treated the subsections of § 2119 as factors which would enhance the defendant's sentence rather than as elements of the offense to be proved beyond a reasonable doubt by the prosecution. Subsequent to Appellant's trial, the U.S. Supreme Court issued its decision in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones*, the Court held that § 2119 defines three separate offenses with distinct elements, each of which must be charged by indictment, proved beyond a reasonable doubt by the prosecution, and submitted to a jury for a verdict. *Id.* at 251–52. At first blush

then, it appears that Appellant's conviction and sentence were obtained at the cost of his Fifth and Sixth Amendment rights. We note further, however, that according to the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), a "sentencing enhancement" does not result in either a Fifth or Sixth Amendment violation where the sentence imposed is not greater than the maximum sentence provided for by statute. *See id.* at 2355, 2363.

In this case, the superseding indictment did not charge that the offense resulted in serious bodily injury, nor was that element submitted to the jury for a verdict upon proof beyond a reasonable doubt. Therefore, under *Jones*, Appellant could not have been lawfully convicted and sentenced for a violation of § 2119(2). However, the actual term of imprisonment imposed for his conviction on Count Two, 151 months, is less than the statutory maximum sentence under § 2119(1), which is 180 months. The superseding indictment sufficiently alleged a violation of § 2119(1) and, as we have found, the prosecution carried its burden of proof at trial on this offense. Thus, under both *Jones* and *Apprendi*, no Fifth or Sixth Amendment violation occurred as to Appellant's conviction nor as to the imposition of the term of imprisonment.[2]

█ The same is not true, however, with regard to the district court's imposition of a five-year term of supervised release for Appellant's conviction on Count Two. Pursuant to 18 U.S.C. § 3559(3), § 2119(1) is a

---

2. Appellant concedes that on remand the district judge is likely to impose the same term of imprisonment but asks this Court to vacate the sentence so that the record may be corrected to reflect that he was convicted under § 2119(1) and not § 2119(2). We believe that the district court can correct this error through Rule 36 of the Federal Rules of Criminal Procedure without this Court having to vacate the sentence of imprisonment. *See* Fed.R.Crim.P. 36 ("Clerical mistakes in judgments, orders or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.").

Class C felony because the maximum term of imprisonment is greater than ten years but less than twenty-five years, while § 2119(2) is a Class B felony because the maximum term of imprisonment is twenty-five years or more. *See* 18 U.S.C. § 3559 (West 2000). Both by statute and under the Sentencing Guidelines, the maximum term of supervised release the trial judge may impose for a Class C felony is three years. *See* 18 U.S.C. § 3583(b)(2) (West 2000); U.S.S.G. § 5D1.2(a)(2). In this case, the district court's imposition of a five-year term of supervised release for a conviction of § 2119(1) was in error under both *Jones* and *Apprendi.* Therefore, we VACATE Appellant's sentence as to the term of supervised release imposed for his conviction of Count Two of the superseding indictment and REMAND the case for resentencing.

Finally, we find Appellant's last two assignments of error to be without merit. First, Appellant contends that the district judge erred by admitting evidence of gang affiliation. Second, Appellant contends that the district judge erred by allowing the AUSA and other witnesses to refer to the taking of Summerow's car as "the carjacking." Since there were no objections at trial to the admission of these statements and evidence, these assignments of error are subject to review under the plain error standard. *See* Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). To establish plain error, an appellant must show: 1) that an error occurred in the district court; 2) that the error was plain, i.e., obvious or clear; 3) that the error affected the appellant's substantial rights; and 4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings. *United States v. Koeberlein,* 161 F.3d 946, 949 (6th Cir.1998). An error affects a substantial right of the appellant if it affected the outcome of the district court proceedings. *See United States v. Page,* 232 F.3d 536, 544 (6th Cir.2000) (citing *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).[3]

■■■ Trial courts must treat evidence of gang affiliation with care since most jurors are likely to look unfavorably upon a defendant's membership in a street gang. *See United States v. Jobson,* 102

---

**3.** Appellant argues that trial counsel's failure to object to this testimony constitutes ineffective assistance of counsel under the standards promulgated by the U.S. Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Therefore, Appellant argues, because trial counsel was ineffective, this Court should review these assignments of error under the abuse of discretion standard rather than the plain error standard. We first observe that Appellant has cited no case law in support of his contention that trial counsel's alleged ineffectiveness changes our standard of review from the plain error standard to the abuse of discretion standard where no contemporaneous objection was made to the testimony. Second, we note that claims of ineffective assistance of counsel are rarely cognizable on direct appeal. *See United States v. Seymour,* 38 F.3d 261, 263 (6th Cir.1994). Therefore, the case is not in the correct procedural posture for us to address the contention that trial counsel was ineffective. Finally, as we explain further below, the trial court's alleged erroneous evidentiary rulings (or lack thereof) did not affect the outcome of the trial because the evidence of guilt was overwhelming. Therefore, it is unlikely that trial counsel's performance was ineffective so as to justify using the abuse of discretion standard, even if that standard were applicable in this case, as Appellant suggests. *See Strickland,* 466 U.S. at 694 (holding that in order to prevail on a Sixth Amendment claim for ineffective assistance of trial counsel, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

F.3d 214, 219 n. 4 (6th Cir.1996). This Court has held, however, that evidence of gang affiliation is admissible to establish the defendant's opportunity to commit a crime. *id.* at 221, or where the interrelationship between people is a central issue in the case, *United States v. Gibbs,* 182 F.3d 408, 430 (6th Cir.1999), subject to balancing the probative value of such evidence against its prejudicial effect pursuant to Rule 403 of the Federal Rules of Evidence. *See Jobson,* 102 F.3d at 221–23. In this case, however, we need not decide whether evidence of gang affiliation was properly admitted because the other evidence establishing Appellant's guilt was so overwhelming that the contested evidence could not have affected the outcome of the trial. Therefore, Appellant has failed to establish that the district judge committed plain error with this evidentiary ruling.

■■ Similarly, Appellant's contention that the district court erred by allowing the AUSA and other witnesses to refer to the taking of Summerow's car as "the carjacking" is without merit. Appellant argues that the district judge improperly allowed lay witnesses to invade the province of the jury by testifying as to the ultimate issue in the case, his guilt or innocence. Opinion testimony of a lay witness is not inadmissible simply because it embraces an ultimate issue of fact. *United States v. Sheffey,* 57 F.3d 1419, 1424–25 (6th Cir.1995); *see* Fed.R.Evid. 701, 704. Rule 701 provides that a lay witness may testify in the form of opinions or inferences only if those opinions or inferences are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." In *Sheffey,* this Court held that "if an opinion question posed to a lay witness does not involve terms with a separate, distinct and specialized meaning in the law different

from that present in the vernacular, then the witness may answer it over the objection that it calls for a legal conclusion." *Sheffey,* 57 F.3d at 1426. Testimony "offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules." *Woods v. Lecureux,* 110 F.3d 1215, 1219 (6th Cir.1997).

We observe that while the AUSA and witnesses for the prosecution referred to the taking of Summerow's car as "the carjacking," no witness was ever asked his opinion as to whether Appellant committed the offense of carjacking. Rather, the term "carjacking" was used in the vernacular as a short-hand description of the event. The word "carjacking" has no separate, distinct and specialized meaning in the law in and of itself and in fact is not even used within the text of the statute making theft of a motor vehicle a federal offense. *See* 18 U.S.C. § 2119; *see also Torres v. County of Oakland,* 758 F.2d 147, 151 (6th Cir.1985) (holding lay witness's testimony that Title VII plaintiff had not been discriminated against during interview process was improperly admitted under Rule 704 because the term "discrimination" has a specialized meaning in the law and in lay use the term has a less precise meaning). The district judge carefully instructed the jury as to the elements the government was required to prove in order to secure a conviction under § 2119. No question called for the witness to make a legal conclusion and none of the challenged testimony simply told the jury which conclusion to reach. *See Sheffey,* 57 F.3d at 1426. Therefore, the district judge did not err in admitting this testimony. In any event, even if the district judge erred in allowing these statements to be made, the proof of guilt was so overwhelming that no substantial right of Appellant was

affected. Therefore, we conclude that this assignment of error is without merit.

### Conclusion

For the foregoing reasons, Appellant's conviction and sentence of imprisonment are AFFIRMED. However, we VACATE the sentence as to the term of supervised release imposed for Appellant's conviction of Count Two of the superseding indictment and REMAND the case for resentencing.