NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0068n.06

No. 22-2031

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Feb 20, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| DWIGHT DESHAUN PERRY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: SUTTON, Chief Judge; CLAY and BLOOMEKATZ, Circuit Judges.

**CLAY, Circuit Judge.** After a three-day trial, a jury convicted Defendant Dwight Perry of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On appeal, Perry raises multiple challenges to evidentiary rulings made by the district court during trial. He also challenges the district court's denial of his motion to suppress evidence gathered from a stop and search of a car that led to the arrest for the instant offense. For the reasons stated below, we **AFFIRM** Perry's conviction.

## I. BACKGROUND

### A. Factual Background

Members of the Detroit Gang Intelligence Unit ("GIU") within the Detroit Police Department frequently monitor social media accounts for evidence of criminal or gang-related activity. On February 17, 2020, Corporal Kenneth Valrie, a member of the GIU, saw a live video showing Perry, and his co-Defendant, Creshaun McGee, handling an "AK-style" or "AR-style

pistol" in a vehicle driven by McGee. Trial Trans., R. 153, Page ID #2326–27. This video, posted from an account with the name "Humble Trapper," was a Facebook Live video, meaning Defendants were recording themselves on a cell phone and posting it in real time to Facebook. *Id.* at Page ID #2325.

After seeing the video go live, Valrie alerted other officers in the GIU, who watched the video with him. Two other officers, Officers Bermudez and Hopp, recognized Perry and McGee in the Facebook Live video, and Bermudez told the gathered officers that he knew Perry was a convicted felon. The GIU officers also recognized certain landmarks outside of the car's windows, which indicated to them where the vehicle was traveling. Additionally, officers inferred that the vehicle was a Chevrolet-branded car by an insignia on the steering wheel, and that it was an SUV because the video showed a third row of seats in the car.

Bermudez and Hopp left the GIU office to look for the Defendants based on the identifying information from the video. Eventually, undercover officers reported that they had seen two individuals matching McGee's and Perry's descriptions in a white Chevrolet SUV, and that the driver of the SUV committed a traffic violation. After receiving the location of the vehicle, Bermudez and Hopp followed the Chevrolet SUV and eventually pulled it over.

Two women were now in the vehicle with McGee and Perry, and one of the women told the officers that there was a gun in the car. Hopp saw a gun bag in the third-row seat of the car, which, when opened, contained an AK-style handgun that appeared to be the same gun as the one shown in the Facebook Live video. The officers arrested McGee and Perry for being felons in possession of a firearm.

## B.  Procedural History

On August 5, 2020, a grand jury indictment charged Perry and McGee each with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

### 1.  Motion to Suppress

Before trial, McGee filed a motion to suppress the evidence gathered during the traffic stop, arguing that the stop of the car and the search of the bag in which the gun was found violated the Fourth Amendment.  Perry joined this motion.  After briefing by both sides and a two-day evidentiary hearing, the district court denied the motion to suppress in full.  It found that the officers had legal authority to stop the car under two theories.  First, it concluded that the officers had a reasonable suspicion that Perry had committed a felony based on the Facebook Live video, Bermudez's knowledge of Perry's felon status, and the undercover officers' confirmation that two of the people in the white Chevrolet SUV matched the description of Perry and McGee from the Facebook Live video.  Second, it concluded that the officers had probable cause to believe that McGee had committed a traffic violation based on the undercover officers' report.

The district court then concluded that the warrantless search of the car and the gun bag was lawful pursuant to four independent theories.  First, it concluded that the search constituted a valid protective search because the officers reasonably believed that Defendants were dangerous and could have gained control of the gun before they were arrested.  Second, the court concluded that the search was valid pursuant to the automobile exception to the warrant requirement because the officers had probable cause to believe that the gun depicted in the Facebook Live video was in the car.  Third, the district court found that the search was a valid search incident to arrest, as both Defendants were unsecured and within reach of the gun at the time of the search.  Fourth, and finally, the district court found that the search was valid because the gun would have been

inevitably discovered because the car was impounded after the stop and subjected to an inventory search.

### 2. Jury Trial

At trial, both parties stipulated that the gun recovered from the car was an operative firearm within the meaning of 18 U.S.C. §§ 921(a)(3) and 922(g).  The parties also stipulated that Perry knew that he had a prior felony conviction and that the gun recovered traveled in and affected interstate commerce.  Thus, the sole element at issue in the trial was whether Perry possessed the firearm.  Defendants primarily attempted to introduce reasonable doubt as to whether the gun from the Facebook Live video was the same as the gun recovered from the car.

The government called five witnesses.  First, Valrie testified how he discovered the Facebook Live video, and the government introduced the video into evidence through his testimony.  Then, Officers Bermudez, Hopp, and Humes, all members of the GIU who stopped the car driven by McGee and recovered the firearm, testified to how they watched the Facebook Live video, and how they eventually apprehended the Defendants.  The government introduced the gun recovered from the car into evidence, and Hopp testified to the similarities between this gun and the gun in the Facebook Live video.  Finally, the government called Agent Joshua McClean, the Alcohol, Tobacco, Firearms, and Explosives ("ATF") agent who had verified that the gun recovered from the car was operable.  He too testified extensively to the similarities between the gun recovered from the car and the gun depicted in the Facebook Live video.  During jury deliberations, the jurors asked to see and were provided with the gun recovered from the car.

The jury found both Defendants guilty of being felons in possession of a firearm.  The district court sentenced Perry to 64 months' incarceration, and Perry timely appealed.

## II. DISCUSSION

On appeal, Perry raises multiple challenges to various portions of testimony admitted at trial. Specifically, he challenges the admission of testimony that implied he was affiliated with a gang known as Chedda Av. He also argues that testimony about his prior encounter with the police violated Rule 404(b) of the Federal Rules of Evidence, and that the cumulative effect of all asserted errors denied him a fair trial. Perry also challenges the district court's denial of his motion to suppress evidence—namely, the firearm at issue—from the search of the car.

### A. Gang-Affiliation Testimony

Perry concedes that he did not challenge the admission of gang-affiliation testimony in the district court. When a defendant fails to object to the admission of testimony in the district court, we review the claim on appeal for plain error. *See United States v. Collins*, 799 F.3d 554, 588 (6th Cir. 2015); *United States v. Willoughby*, 742 F.3d 229, 236 (6th Cir. 2014). To establish that admitted testimony constituted plain error, the defendant must show "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. 258, 262 (2010) (alteration in original) (internal quotation marks omitted) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). Plain error review makes this Court's "review . . . doubly deferential: we must determine, in essence, that the district court obviously abused its discretion" when admitting the challenged testimony. *Willoughby*, 742 F.3d at 238.

Perry contends that the district court plainly erred by admitting two portions of testimony and a statement made by the government in its closing argument, which he claims improperly

conveyed Perry's affiliation with the Chedda Av gang. First, he challenges multiple statements made by Corporal Valrie, the original officer who discovered the Facebook Live video. When describing how he discovered the Facebook Live video, he stated that he "had seen and had intel of" the "individual . . . controlling" the "Humble Trapper" Facebook page "being involved with a violent gang called Chedda Av." Trial Trans., R. 153, Page ID #2325–26. He also testified that he invited other officers to watch the video because Perry and McGee were known to be gang associates or members. He further confirmed that Perry was in the GIU's gang database, which tells the GIU "whether a person is either a known gang member or an associate of a gang." *Id.* at Page ID #2329.

Perry also challenges statements made by Valrie describing the Facebook Live video and the still photos taken from the video. The video and photos were primarily introduced through Valrie's testimony, so his explanatory testimony was given just after the jury had seen the video or photos themselves. The video depicted McGee wearing a face mask that said, "RIP Gutta," and Valrie told the jury that Gutta was a member of the Chedda Av gang who had been killed. *Id.* at Page ID #2332–33. Valrie also told the jury that the video showed Perry "shout[ing] out the gang Chedda Av and sa[ying], 'gang-gang.'" *Id.* at Page ID #2340. He further testified that a hand gesture made by Perry in the video was a "gang sign[] for Chedda Av." *Id.*

Second, Perry challenges testimony from Officer Humes, a member of the GIU who participated in the stop of the Chevrolet SUV. Specifically, when describing his position in the GIU, Humes testified that he focused on crimes "relating to gang activity . . . ." Trial Trans., R. 154, Page ID #2488. Lastly, Perry claims that the government's closing argument reinforced testimony that Perry had prior police involvement, stating that Perry and McGee were apprehended in "an area where prior police contact with Mr. Perry occurred." Trial Trans., R. 155, Page ID

#2573. In closing arguments, the government also reiterated that officers had testified at trial that they knew Perry and McGee. The government did not reference Perry's gang affiliation in its closing arguments, so we will instead address these statements when discussing Perry's challenges to the admission of prior police contact evidence.

Perry argues that the admission of this testimony constituted plain error in four ways. Specifically, he claims that the described testimony was irrelevant, that it was substantially more prejudicial than probative, that its admission violated Rule 404(b) of the Federal Rules of Evidence, and that the testimony lacked foundation. We will consider all four arguments in turn.

### 1. Relevance

Perry first argues that the district court plainly erred by admitting this gang-affiliation testimony because it was irrelevant to the charged conduct of being a felon in possession of a firearm. Evidence is relevant if "it has any tendency to make a fact" that "is of consequence in determining the action . . . more or less probable than it would be without the evidence." Fed. R. Evid. 401. The standard is "extremely liberal," as relevant evidence merely needs to "advance the ball." *Dortch v. Fowler*, 588 F.3d 396, 400–01 (6th Cir. 2009).

All of the challenged testimony is relevant background evidence. Background evidence typically "is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Even more specifically, law enforcement officers "are permitted to testify regarding how they became involved in a case, what allegations they were investigating, who the suspects were, and similar background information." *United States v. Young*, 847 F.3d 328, 351 (6th Cir. 2017) (citing *United States v. Kilpatrick*, 798 F.3d 365, 381 (6th Cir. 2015)); *see also United States v.*

*Gibbs*, 506 F.3d 479, 484 (6th Cir. 2007) (concluding that law enforcement officers' testimony was relevant to describe how they came to investigate the defendant).

Much of the challenged testimony describes how and why law enforcement viewed the Facebook Live page and investigated Perry in the first place. For example, Valrie's statements describing that the person who controlled the "Humble Trapper" page was involved with Chedda Av, that he called other officers over to watch the video because it depicted gang members with a gun, and that Perry was in the GIU's gang database were all relevant to describing the officer's initial investigation. Furthermore, Humes' description of what crimes the GIU investigated was relevant to explaining his and other officers' roles in the GIU.

Valrie's statements describing the Facebook Live video were also relevant as background evidence that "complete[d] the story of the charged offense." *Hardy*, 228 F.3d at 748. As we have acknowledged, "[t]he purpose of background evidence is to put the charges in the appropriate context. It would be exceedingly difficult for witnesses to relay a story without referencing . . . contemporaneous acts that are incidental but necessary to telling a cogent story." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015). Background evidence may also be admitted because witnesses who are restricted to testifying in a "sanitized" manner may lose credibility with the jury. *Id.* (citation omitted); *see also Old Chief v. United States*, 519 U.S. 172, 188–89 (1997); *United States v. Peete*, 781 F. App'x 427, 433 (6th Cir. 2019).

Valrie's testimony describing the Facebook Live video is relevant context for arguably the most probative piece of evidence offered by the government—the Facebook Live video. It provides context for Perry's own statements and hand gesture, as well as McGee's choice of clothing after the jury watched the video for itself. *Cf. United States v. Payne-Owens*, 845 F.3d 868, 872 (8th Cir. 2017) ("[T]he generic and fleeting testimony by the government's witness about

the [gang], the significance of the hand gesture, and defining the slang words used in the Facebook messages contributed to the narrative of the charged crime. The district court correctly characterized this evidence as intrinsic because it helped 'provide a total picture.'"). Notably, Perry has not challenged the video's admission on appeal, but only the testimony describing it. Because all of Perry's challenged testimony was relevant background information describing the basis for the investigation or Perry's own statements made during the commission of the offense, it easily surpasses the low bar of relevancy, and the district court did not plainly err in admitting it.

### 2. Probative Value and Prejudicial Effect

Relevant evidence may nevertheless be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)) (alteration in original). When evaluating a challenge under Rule 403, our review "is limited in that we must look at the evidence in 'the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.'" *Id.* (quoting *Bonds*, 12 F.3d at 567).

As we concluded above, the challenged testimony provided probative background information about the investigation and about Perry's statements in the video. In weighing this probative value against potential prejudice, we have cautioned that gang-affiliation evidence can have a prejudicial effect because "most jurors are likely to look unfavorably upon a defendant's membership in a street gang." *United States v. Sherrill*, 972 F.3d 752, 765 (6th Cir. 2020) (quoting

*United States v. Tolbert*, 8 F. App'x 372, 378 (6th Cir. 2001)). Even still, in this case, Perry has failed to show that the district court plainly erred in admitting the challenged gang-affiliation testimony.

First, because much of the challenged testimony enhanced the witnesses' credibility with the jury, and because "defendants are not entitled to a 'sanitized' recounting of the facts," the district court did not plainly err in admitting it. *Gibbs*, 797 F.3d at 424 (citation omitted). To be sure, the government could have limited its references to gang affiliation when describing why the officers watched the Facebook Live video and targeted Perry for their investigation. But "prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *Id.* (citation omitted). And background evidence is admissible to allow the witness to provide this full narrative for the jury. *See Old Chief*, 519 U.S. at 188–89; *Peete*, 781 F. App'x at 433. Thus, even if the government could have presented this background evidence without as many explicit references to Perry's gang affiliation, it was not required to do so, and any error in admitting it was not "clear or obvious." *Marcus*, 560 U.S. at 262 (quoting *Puckett*, 556 U.S. at 135).

For similar reasons, Perry has failed to show that the district court plainly erred in admitting Valrie's testimony describing the Facebook Live video. Recall that the jury heard this testimony just after it watched the Facebook Live video itself. Restricting Valrie's testimony to a sanitized account of the video that did not mention the gang references in the video itself could call Valrie's credibility into question. *See Peete*, 781 F. App'x at 433. Without fully describing the video exactly as the jury saw it, "the effect may [have] be[en] like saying, 'never mind what's behind the door,' and jurors may well [have] wonder[ed] what they [were] being kept from knowing." *Old Chief*, 519 U.S. at 189. Because a full description of the video's contents likely maintained

Valrie's credibility before the jury, the prejudicial effect of his testimony did not substantially outweigh its probative value.

Second, because Perry does not challenge the multiple other references to his gang affiliation made in the trial, the jury would have had knowledge of his gang-affiliation even absent the challenged testimony. For example, Perry challenges Humes' statement that the GIU investigates crimes "relating to gang activity." Trial Trans., R. 154, Page ID #2488. But Perry does not challenge other law enforcement officers' testimony that they were members of the GIU—the Gang Intelligence Unit—or descriptions of the GIU's role in investigating "violent gangs." Trial Trans., R. 153, Page ID #2323. And, again, Perry does not challenge the admission of the Facebook Live video itself, which depicted him making gestures and comments affiliating him with the Chedda Av gang. Furthermore, the government made no reference to Perry's gang affiliation during its closing arguments, minimizing any prejudicial effect that the gang-related testimony could have had on jury deliberations. *Cf. Newsom*, 452 F.3d at 602. Accordingly, any prejudice stemming from this additional background information did not substantially outweigh the testimony's probative value, given what else was before the jury, and the district court did not plainly err by admitting this testimony.

Third, and most importantly, Perry has not shown that any of the challenged testimony affected the outcome of his trial as he is required to do when we review for plain error. *See Marcus*, 560 U.S. at 262. The government put forward extensive evidence to support Perry's conviction of being a felon in possession of a firearm. The central issue at trial was whether the gun depicted in the Facebook Live video was the same gun as the one recovered from the Chevrolet SUV. The government showed the jury the Facebook Live video, which depicted the gun in Perry's possession. After officers saw the video, it took only a few hours for them to find Perry and McGee

in what appeared to be the same car as the video with the firearm in their possession. The jury also observed the gun at trial, and even requested to examine it during deliberations. And ATF Agent McLean and Officer Hopp testified extensively as to the similarities between the gun depicted in the Facebook Live video and the gun recovered from the car. Given the strong evidence in support of Perry's conviction, Perry has not shown that the gang-related testimony admitted at trial, even if in error, "affected the outcome of the district court proceedings." *Marcus*, 560 U.S. at 262 (quoting *Puckett*, 556 U.S. at 135).

### 3.  **Rule 404(b)**

Perry also argues that the challenged testimony related to his gang membership violated Rule 404(b) of the Federal Rules of Evidence. Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Although Rule 404(b)(2) contemplates permitted uses for this testimony, Rule 404(b)(3) requires that the government provide notice to the defense of any evidence that the government seeks to admit for these permitted purposes. In this case, Perry argues that the challenged testimony constituted impermissible character evidence, and that, even if there were a permitted purpose, no notice was given to the defense that the government would be using this evidence.

However, background evidence does not implicate Rule 404(b). *See Hardy*, 228 F.3d at 748. For the reasons discussed above, the district court properly admitted the challenged testimony as background evidence as it either described how law enforcement officers came to investigate Perry or provides context for Perry's own statements and actions taken during the commission of the instant offense. Because the testimony did not implicate Rule 404(b), the lack of notice did not require exclusion of the testimony. *See United States v. Barnes*, 49 F.3d 1144, 1149 (6th Cir.

1995) ("Rule 404(b) is not implicated when the other crimes or wrongs evidence is part of a continuing pattern of illegal activity. When that circumstance applies, the government has no duty to disclose the other crimes or wrongs evidence."). Accordingly, the district court did not plainly err by admitting this testimony because it did not violate Rule 404(b) to do so.

### 4. Foundation

Finally, Perry contends that the law enforcement officers failed to establish the proper foundational knowledge to testify that Perry was affiliated with a gang. Rule 602 of the Federal Rules of Evidence requires a witness to have personal knowledge of the matters about which he or she testifies. The required showing to satisfy Rule 602 is "low," and this Court has stated that "[t]estimony should not be excluded for lack of personal knowledge unless no reasonable juror could believe that the witness had the ability and opportunity to perceive the event that he testifies about." *United States v. Franklin*, 415 F.3d 537, 549 (6th Cir. 2005) (quoting *United States v. Hickey*, 917 F.2d 901, 904 (6th Cir. 1990)).

On appeal, Perry does not specify which officers' testimony he challenges as lacking foundation, but only Valrie's testimony explicitly identified him as a member of a gang. However, Valrie's testimony contained specific facts establishing his personal knowledge of Perry's gang affiliation. He identified himself as an officer in the Detroit Gang Intelligence Unit, and stated that Perry was in the GIU's gang intelligence database, which tells officers "whether a person is either a known gang member or an associate of a gang." Trial Trans., R. 153, Page ID #2329; *see United States v. Martinez*, 832 F. App'x 432, 434–35 (6th Cir. 2020) (concluding that a prison investigator could testify to his personal knowledge of gangs in the prison). Furthermore, to the extent that Perry challenges Valrie's testimony describing Perry's statements and hand gestures related to Chedda Av in the Facebook Live video, these too did not lack foundation, as Valrie

watched the video himself and testified that he knew what the hand gesture meant. *Cf. United States v. Lucas*, No. 19-6390, 2021 WL 4099241, at *18 (6th Cir. Sept. 9, 2021) ("[The witness'] testimony as to facts about the gang's history and symbology remain[s] inadmissible except to the extent that he personally observed them."). Thus, the district court did not commit plain error by admitting this testimony.

### B. Prior Police Encounter Testimony

Contrary to the gang-affiliation testimony, Perry claims that he preserved his challenge to contested testimony describing his prior police contacts. However, his trial counsel only objected to the relevance of this testimony, and, on appeal, he argues only that the testimony constituted impermissible character evidence, in violation of Fed. R. Evid. 404(b) and that its prejudicial effect substantially outweighed its probative value, in violation of Fed. R. Evid. 403. Because he did not object on these bases in the district court, we also review the admission of this testimony for plain error. *See United States v. Ramer*, 883 F.3d 659, 679 (6th Cir. 2018).

Perry contends that the district court impermissibly admitted testimony from Officer Bermudez, the officer who identified Perry to other officers as a felon, about Bermudez's prior encounter with Perry. Specifically, when describing how he recognized Perry from the Facebook Live video, Bermudez stated that he recognized Perry "[f]rom a previous encounter back in 2019 . . . ." Trial Trans., R. 153, Page ID #2380. When asked to describe this previous encounter, Bermudez stated that "[i]t was a street investigation, impeding vehicular traffic." *Id.* Bermudez also testified that he received Perry's name from this investigation.

The government argues that this testimony did not violate Rule 404(b) because Perry's prior police contact was not a "wrong[] or other act" as defined by the Rule. The encounter could qualify as a prior "wrong[]" under Rule 404(b). This rule does not require admission of a prior

crime, but "applies to the admission of evidence of 'any conduct of the defendant which may bear adversely on the jury's judgment of his character.'" *United States v. Jobson*, 102 F.3d 214, 219 n.4 (6th Cir. 1996) (quoting *United States v. Cooper*, 577 F.2d 1079, 1087–88 (6th Cir. 1978)). Although Bermudez did not specify whether he arrested Perry during this prior incident, and although impeding traffic is not a serious crime, a jury may have made a negative inference about Perry's character because he had prior contact with law enforcement that led to Perry giving his name in connection with an investigation.

Nevertheless, even if the testimony could fall under Rule 404(b)'s definition of a "wrong[] or other act," it does not fall into Rule 404(b)'s general prohibition on the admission of evidence because it too constituted proper background evidence. *See Hardy*, 228 F.3d at 748. Bermudez knew Perry from a prior encounter, and was able to identify him on the Facebook Live video. Valrie had also previously testified that Bermudez knew Perry was a felon, providing further context for why the officers sought out Perry and McGee. *See United States v. Thomas*, 223 F. App'x 447, 455 (6th Cir. 2007) (finding an officer's prior encounters with defendant admissible as background evidence when the encounters explained how the officer recognized the defendant in surveillance video and why law enforcement focused their investigation on the defendant).

Finally, Perry argues that, even if the testimony was properly admitted, its prejudicial effect substantially outweighed its probative value, violating Rule 403. As the government correctly argues, the prejudicial effect of this testimony was extremely limited. To show how he could identify Perry, Bermudez testified that he had previously investigated Perry for the minor civil infraction of impeding traffic and that he had run Perry's name in the course of this investigation. *See* Mich. Comp. Laws § 257.676b. Further, Perry has not shown that any mention of his prior civil infraction "affected the outcome of the district court proceedings," particularly given his

stipulation to a prior felony. *Marcus*, 560 U.S. at 262 (quoting *Puckett*, 556 U.S. at 135). And, because the testimony itself was not substantially more prejudicial than probative, the government's reference to the testimony during its closing argument did not otherwise prejudice Perry. Because the testimony did not violate Rules 403 or 404(b), the district court did not plainly err in admitting testimony relating to Perry's prior police contact.

### C. Cumulative Error

Finally, Perry argues that the cumulative effect of the errors charged above requires reversal. To prevail on this claim, Perry must show that the cumulative effect of any errors made by the district court "produce[d] a trial setting that [was] fundamentally unfair" and amounted to a "deprivation of due process." *United States v. Blackwell*, 459 F.3d 739, 770 (6th Cir. 2006) (quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983)). But because the district court did not plainly err in admitting any of the challenged testimony, the cumulative error doctrine does not merit reversal. *See United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012) ("Where, as here, no individual ruling has been shown to be erroneous, there is no 'error' to consider, and the cumulative error doctrine does not warrant reversal." (quoting *United States v. Deitz*, 577 F.3d 672, 697 (6th Cir. 2009))).

Even if the district court did plainly err on any of the above charges, the cumulative effect of them did not deprive Perry of due process. As stated, the challenged references to Perry's gang-affiliation were brief, not emphasized by the government in its closing arguments, and their exclusion would not have eliminated all gang-related evidence from the trial. The challenged testimony about Perry's prior police encounter only referenced his investigation for a civil infraction, and the jury was already aware that Perry had a prior felony conviction. Most importantly, as discussed above, the government put forward exhaustive evidence of Perry's

possession of an operable firearm. Accordingly, even if Perry had shown that the district court plainly erred in admitting some of the challenged testimony, the cumulative effect of the errors did not render Perry's trial fundamentally unfair.

### D. Motion to Suppress

Separate from his evidentiary arguments, Perry also challenges the district court's denial of his motion to suppress evidence gathered from the stop and search of the Chevrolet SUV. On this charge of error, Perry's appellate briefing presents a fundamental problem: the district court denied the motion to suppress for multiple independent reasons, and Perry only challenges some of these reasons on appeal. Recall that the district court upheld the stop of the car based on a finding that the officers had a reasonable suspicion to believe that Perry committed a felony, and probable cause to believe that McGee committed a traffic violation. On appeal, Perry only contests the latter conclusion. And, in upholding the warrantless search of the car, the district court found that (1) it was a valid protective search; (2) the search complied with the automobile exception to the warrant requirement; (3) it was a valid search incident to arrest; and (4) the firearm would have been inevitably discovered. On appeal, Perry fails to challenge the district court's first independent conclusion—that the warrantless search of the car was a valid protective search. Thus, even if we were to agree with Perry on some of his arguments, no ruling from this Court could reverse the denial of his motion to suppress because the district court's unchallenged reasons for denying the motion would still stand.

This Court has repeatedly held that a litigant's failure to address every independent ground on which the district court rests its decision renders the judgment unreviewable. *See Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 456 (6th Cir. 2021) ("When a district court provides two alternative grounds for its decision, the losing party must challenge each ground on appeal to

- 17 -

change the outcome."); *Hardrick v. City of Detroit*, 876 F.3d 238, 244 (6th Cir. 2017) ("Appellate courts 'review[] judgments, not opinions.'") (alteration in original) (citation omitted). Without challenging each independent basis for the district court's holding, litigants abandon challenging arguments that independently sustain the judgment's validity. *Stewart*, 990 F. 3d at 457. This means that any relief we grant cannot change the ultimate outcome. *Id.* For example, we have specifically found that an appellant who did not challenge every independent ground for a denial of a motion to suppress could not prevail on his appeal. *See United States v. Fox*, 363 F. App'x 375, 377 (6th Cir. 2010) ("Since the district court's ruling on the good faith exception sufficed to justify its denial of Fox's motion to suppress, Fox's failure to appeal that aspect of the court's decision means the denial of the motion still stands."). Similarly, by failing to challenge every independent basis for the district court's denial of his motion to suppress, Perry's challenge on appeal cannot succeed.

## III.   CONCLUSION

For the reasons stated above, we **AFFIRM** Perry's conviction.