RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0189p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BRASHARD J. GIBBS,

*Defendant-Appellant.*

No. 14-6344

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:13-cr-20323—Sheri H. Lipman, District Judge.

Decided and Filed:  August 14, 2015

Before:  CLAY and SUTTON, Circuit Judges; WATSON, District Judge.[*]

_____

**COUNSEL**

_____

**ON BRIEF:**  Juni S. Ganguli, GANGULI LAW FIRM, Memphis, Tennessee, for Appellant.
Kevin Whitmore, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for
Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge.  Brashard J. Gibbs ("Defendant") appeals his conviction and
sentence for being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).
Defendant contests two evidentiary decisions of the district court on the bases that the evidence
was admitted for an improper purpose under Federal Rule of Evidence 404(b) and that the unfair
prejudicial impact of the wrongly admitted evidence substantially outweighed any probative

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting
by designation.

1

value it added to proving the necessary elements of the charged offense. Although we find that certain evidence was admitted for an improper purpose, we **AFFIRM** the judgment of the district court because the wrongful admission of the evidence at issue constituted no more than harmless error.

## BACKGROUND

### Procedural History

On February 18, 2014, Defendant was indicted on two counts of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Following a jury trial, he was convicted of both counts and sentenced to a term of 120 months in prison, to be followed by three years of supervised release. This timely appeal followed.

### Factual Background

The facts of this case are fairly simple. A group of men committed a drug heist in June 2013, stealing a significant quantity of cash and marijuana from the home of an acquaintance whom they knew to be a drug dealer. A second group of men—all friends or associates of the drug dealer—discovered that the first group was responsible for the theft and sought to take revenge. Defendant was among the second group of men.

#### A. Drive-by Shooting at the Carwash

On August 28, 2013, the first group of men—consisting of Randy Godwin, Randy's cousin "Pookie," Cortaze Tisdel, and an individual identified only as "Smoke"—were hanging out together at a local carwash, washing the cars they had purchased with the proceeds of their heist. Defendant and the second group of men allegedly took their revenge by committing a drive-by shooting at the carwash on that day. Pookie was killed. Tisdel was shot in his rear, but he survived.

Godwin testified at trial, that just prior to the shooting, he left the carwash and walked to a nearby store around the corner in order to converse with a girl whom he recognized. While he was chatting in front of the store, he noticed Defendant in the back of a red car that was slowly driving down the street. The vehicle continued past him and turned the corner at the end of the

block. Shortly after the car made its turn towards the carwash, Godwin heard a barrage of gunfire. He testified that he ran toward the carwash, and when he peeked around the corner, he could clearly see Defendant leaning out of the back window of the vehicle firing a large assault rifle at Godwin's friends. Tisdel testified to substantially the same facts, but from his perspective as an actual target and victim of Defendant's gunfire. Because Godwin and Tisdale were afraid, neither initially spoke to the police following the shooting.

News of the shooting quickly spread throughout Defendant's neighborhood. Keith Howell, one of Defendant's close friends, contacted Defendant to confirm whether the story he had heard was true—principally, whether Defendant had participated in a drive-by shooting at the carwash earlier that same day. Defendant, according to Howell, confirmed the rumors but noted that he and his accomplices had not left behind any evidence.

**B.        September 1, 2013 Shooting**

On September 1, 2013, a few days after the carwash shooting, Defendant's friendship with Howell was materially altered after Howell shot at a mutual friend following an altercation. Luckily, the bullet only grazed the other man's neck. Defendant who was standing nearby with his assault rifle became enraged. He shot once at Howell's feet and then once right by Howell's head before he took Howell's gun, and Howell ran away. Howell's cousin, Xzavier McGaughy, was also present for these events and helped Defendant take their wounded friend to the hospital. McGaughy also testified at Defendant's trial, and his testimony surrounding this incident was consistent with Howell's recounting of events.

Bullet casings were recovered by the police following both the August 28 carwash drive-by and the September 1 shooting. Defendant's indictment for being a felon in possession of ammunition was based on these two events, where it was alleged that he brandished and discharged ammunition from the same assault rifle.

**C.        Photographic Evidence**

Prior to Defendant's trial, the government informed the defense that it would be introducing a music video, in which Defendant can be seen toting an assault rifle, along with still frames from the music video (hereinafter referred to as photographs). The district court

disallowed the video as unduly prejudicial but permitted the government to introduce certain photographs that depicted Defendant by himself holding the assault rifle. The defense objected to the remaining photographs on the basis of relevance, prejudicial effect, and lack of foundation.[1]

### D.    Evidence of a Second Drive-by Shooting

Prior to trial, the government informed the defense that it intended to solicit testimony from Godwin regarding a threat made by Defendant and a second drive-by shooting that occurred nearly one month after the tragic events at the carwash. Godwin would testify that, on September 19, 2013, he was approached by Defendant, who threatened that if Godwin did not stop talking about how Defendant was responsible for the August 28 shooting and Pookie's death, Godwin would be the next person to get murdered. Godwin would also testify that, two days after being threatened, Defendant and his comrades riddled Godwin's vehicle with at least thirty bullets while they were both driving down the highway. The government proposed to corroborate Godwin's story with the testimony of one of the individuals who was a passenger in Godwin's vehicle during the battery and with crime scene photographs that captured the damage done to Godwin's sports utility vehicle. The government professed that the evidence was especially probative and, moreover, it was necessary because the defense intended to attack Godwin's credibility on cross by highlighting his failure to initially identify Defendant to the police.

The defense objected to the testimony on the basis that this incident constituted a separate bad act, unrelated to the charged offense. Therefore, defense counsel argued, the evidence was barred by Rule 404(b), to the extent it was being utilized merely to highlight Defendant's bad character and suggest that Defendant had a propensity for committing similar bad acts. The government's view, however, was that the evidence could be admitted pursuant to the "res gestae" exception to Rule 404(b), which allows for the introduction of background or intrinsic evidence that is necessary to complete a witness' story. The district court agreed that details surrounding the highway drive-by shooting were necessary to complete Godwin's story, and it

---

[1]The foundational challenge was abandoned after a witness, outside the presence of the jury, was able to testify to the timeframe in which the video was taken.

also found that, even if the testimony did not constitute background evidence, it was not barred by Rule 404(b) because it served a permissible purpose—mainly, to help establish identity and motive. Therefore, the testimony was allowed (over defense counsel's objection) after the district court first considered Godwin's testimony outside the presence of the jury. Notably, the district court permitted the government to solicit Godwin's testimony on direct examination, prior to any attempts by the defense to impeach Godwin's credibility.

### E.     Identifying Defendant

At trial, each of the aforementioned witnesses—Godwin, Tisdel, Howell, McGaughy, and one of the passengers in Godwin's vehicle on September 21—testified about their recollection of Defendant's assault rifle. It was an AK-47, known on the street as a "chopper," that could be used with either a standard magazine or a drum. According to their testimony, Defendant carried this gun around all of the time, such that the witnesses were familiar with the weapon prior to either of the shooting incidents that are related to this case. They were each shown the photographs from the music video, and each confirmed that the photographs depicted Defendant holding the assault rifle that he had used against them. The government also introduced ballistics evidence showing that the bullet casings recovered from the August 28 and September 1 shootings were of the type that would be fired by an AK-47, and that the casings from both incidents were expelled from the same gun.

Defense counsel aggressively cross-examined Godwin, Tisdel, and Howell, respectively, about their individual decisions to withhold information from the police immediately following the carwash drive-by shooting. Yet, based on the other evidence admitted at trial, the jury convicted Defendant on each count of being a felon in possession of ammunition.

### DISCUSSION

### Standard of Review

"Traditionally, decisions on 'questions of law' are reviewable *de novo*, decisions on 'questions of fact' are reviewable for clear error, and decisions on 'matters of discretion' are reviewable for abuse of discretion." *Highmark Inc. v. Allcare Health Mgmt Sys., Inc.*, 134 S. Ct. 1744, 1748 (2014) (internal quotation marks omitted). This rule, encompassing three standards

for reviewing district court judgments, is the "ordinary standard for courts of appeals." *Teva Pharmas. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 839 (2015) (internal quotation marks omitted). This generally applicable framework naturally applies to this Court's review of evidentiary decisions. *See, e.g., Yoder & Frey Auctioneers, Inc. v. EquipmentFacts, LLC*, 774 F.3d 1065, 1071 (6th Cir. 2014).

The Supreme Court has also stated that "[a]ll evidentiary decisions are reviewed under an abuse-of-discretion standard." *General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). But this directive "is not inconsistent with [an appellate] court's abiding duty to review questions of law de novo," or questions of fact for clear error. *United States v. Clay*, 667 F.3d 689, 694–95 (6th Cir.), *reh'g en banc denied*, 667 F.3d 753 (Apr. 19, 2012). The Supreme Court in *Joiner* simply recognized that all evidentiary decisions are discretionary because "[a]ssessing the probative value of the proffered evidence, and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (internal quotation marks omitted).

The admission of evidence under Rule 404(b)—like the admission of all evidence— implicates discretionary judgments under Rules 401 (relevance) and 403 (probative value versus unfair prejudice); it also involves a question of fact and a question of law. *See United States v. Hardy*, 228 F.3d 745, 750 (6th Cir. 2000). Thus, in addressing a Rule 404(b) evidentiary issue, we employ each of the three standards of review discussed above.[2] *See United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008); *United States v. Abboud*, 438 F.3d 554, 580 (6th Cir. 2006).

First, we review for clear error whether there is a sufficient factual basis for the occurrence of the "bad act" that is being proffered as evidence (and challenged pursuant to 404(b)). *United States v. Murphy*, 241 F.3d 447, 450 (6th Cir. 2001). Second, we determine *de novo* whether the evidence was proffered for an admissible purpose. *Id.* Third, we review for an abuse of discretion whether the probative value of the proffered evidence is substantially outweighed by any undue prejudice that will result from its admittance. *Id.*

---

[2]One family of cases from this Court, however, does support a contrary position that 404(b) determinations should only be reviewed for abuse of discretion. *See, e.g., United States v. Mack*, 258 F.3d 548, 553 n.1 (6th Cir. 2001); *United States v. Jenkins*, 345 F.3d 928, 936 (6th Cir. 2003); *United States v. Jenkins*, 593 F.3d 480, 484 (6th Cir. 2010); *United States v. Allen*, 619 F.3d 518, 524 n.2 (6th Cir. 2010); *United States v. Qin*, 688 F.3d 257, 261 (6th Cir. 2012).

"A factual finding is clearly erroneous when a court, on reviewing the evidence, is left with the definite and firm conviction that a mistake has been committed." *United States v. Seymour*, 739 F.3d 923, 928 (6th Cir. 2014) (internal quotation marks omitted). The district court's decision to view the evidence in a particular way, however, does not constitute clear error simply because there are other reasonable interpretations of that same evidence that may seem preferable to the reviewing court. *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 331 (6th Cir. 2002).

A district court has abused its discretion when its decision rests on the wrong legal standard, a misapplication of the correct standard, or on clearly erroneous facts. *EquipmentFacts, LLC*, 774 F.3d at 1070. A clear error of judgment, which occurs where the position taken is without sound justification, also constitutes an abuse of discretion. *Id*.

Whether the evidence is relevant and whether it satisfies the *res gestae* exception, are questions that are likewise reviewed for an abuse of discretion.

**Analysis**

I.     **Prejudicial Photographs**

Defendant reasserts his objections to the relevancy and prejudicial impact of the photographs that depict him holding the AK-47.[3] Relevance is defined by the evidence having the "tendency to make the existence" of a disputed fact "more probable or less probable." *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 517 (6th Cir. 1998) (citing Fed. R. Evid. 401). Pursuant to Rule 403, the district court may exercise its discretion to exclude relevant evidence if the probative value of that evidence is substantially outweighed by the danger of that evidence unfairly prejudicing the jury against the defendant. *United States v. Bell*, 516 F.3d 432, 440 (6th Cir. 2008). This Court must keep in mind that "[b]road discretion is given to district courts in determinations of admissibility based on . . . relevance and prejudice, and those decisions will not be lightly overturned." *Id.* (internal quotation marks omitted).

---

[3]Defendant also argues that the admission of the photographs was improper because there is no proof that the weapon in the photographs was a real gun. Defendant's position is without merit because the photographs certainly constitute circumstantial evidence that he possessed a real gun, and moreover, because the argument was not raised below, it is only reviewed for plain error. *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 541 (6th Cir. 2014).

The photographs are certainly relevant because photographic evidence that Defendant at one time had a gun, that appears to be in all respects the same as the one described by the witnesses, makes it more likely that he did in fact have that gun (and the ammunition for it) at the time of the incidents that he was charged for in this case. With respect to prejudice, the district court is granted wide latitude in its Rule 403 determinations and there is no reason to believe that it abused its discretion in this case. The photographs showed nothing more than Defendant holding the gun he was accused of using in the indictment. A defendant is not afforded the right to be free of all prejudicial evidence, merely evidence that is unfairly prejudicial to the extent that it outweighs its probative value. Therefore, we affirm the district court's judgment with respect to this issue.

## II.     Evidence Related to the Highway Drive-by Shooting

Defendant also challenges the admission of the testimony regarding the September 21, 2013 drive-by shooting on the highway, as well as the corroborating photographs, arguing that the testimony and photographs constitute impermissible character evidence.

### A.     Res Gestae

*Res gestae* evidence, also described as "background" or "intrinsic" evidence, is "an exception" to the Rule 404(b) bar on propensity evidence. *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013).

> Proper background evidence has a causal, temporal or spatial connection with the charged offense. Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense.

*Hardy*, 228 F.3d at 748.

The government argues that the testimony was permissible because it arose from the same set of facts—retaliation for the theft—and it was necessary because it completed Godwin's story. The problem with the government's theory is that, in this case, Defendant was simply charged with being a felon in possession of ammunition. Background evidence must be "inextricably intertwined with" or "necessary to complete the story of the charged offense." *Id.*

at 748. Retaliation that occurred one month after the shooting is not at all necessary to determine whether Defendant possessed ammunition at that earlier time.

The government introduced into evidence spent AK-47 shells from the August 28 shooting and contemporaneous photographs depicting Defendant with an AK-47; it also elicited eye-witness testimony confirming that Defendant was one of the shooters at the carwash drive-by shooting and, as actual background evidence, the testimony of multiple witnesses confirming that Defendant regularly carried an AK-47. Testimony regarding the highway drive-by was not necessary to complete the story of the charged offense. Defendant sought retaliation against Godwin's group of friends. His retaliation consisted of firing his AK-47 at Godwin's group while they were socializing at a carwash. The police collected the spent shell casings, tied Defendant to the shooting, and charged him for being a felon in possession of ammunition. The story was complete without any reference to the shooting that occurred one month later.

*Res gestae* cannot serve as a "backdoor to circumvent [the] goals" of Rule 404(b). *Clay*, 667 F.3d at 698 (internal quotation marks omitted). It appears that the main purpose of soliciting testimony regarding the highway drive-by shooting was to show that Defendant has such a high disregard for human life that he was willing to engage in a shootout on a well-travelled interstate highway and to corroborate that story with highly prejudicial photographs showing Godwin's vehicle riddled with more than thirty bullet holes.

The government argues that, without the testimony, it might be unclear why Godwin or Tisdel came forward about the carwash drive-by shooting when they initially failed to do so immediately following that incident. The government's position is unpersuasive. There would be nothing incomplete about Godwin's story, in relevant part, if he simply admitted that, at some point after August 28, 2013, he went to the police to offer his assistance, inasmuch as he could identify the shooter. Had the defense questioned Godwin's credibility on cross-examination by indicating that he failed to come forward to the police for nearly a month, then the door may have been opened to Godwin's testimony regarding the reasons he did eventually speak honestly with the police—because Godwin feared that Defendant was not finished retaliating after Defendant attempted to kill him for a second time. But absent questions from the defense that invited Godwin to testify that he initially failed to identify Defendant, the government should not

have done so on its own for the purpose of introducing a distinct bad act unrelated to the charged offenses.

Outside of cases where the evidence truly provides background information, establishes a nexus between individuals, or completes the story of the charged offense, evidence of separate bad acts occurring on a subsequent date, much later in the timeline relevant to the charged offense, will rarely constitute background evidence. *Cf. Hardy*, 228 F.3d at 749; *see also* 23 C.J.S. *Criminal Law* § 1126 (2015) ("Where . . . the commission of the other crime was so separated in time, place or circumstance from that of the crime charged . . . evidence of it is not admissible . . . ."). The crime charged in this case was the possession of ammunition by a felon—the physical proof being shell casings from shootings that occurred on August 28, 2013 and September 1, 2013. Evidence of a subsequent shooting on September 21, 2013 is neither "inextricably intertwined" with the charged offense—the possession of ammunition one month prior—nor is it "necessary to complete the story" of that offense, as would be required for it to be properly admitted under the *res gestae* doctrine. *Hardy*, 228 F.3d at 748.

The purpose of background evidence is to put the charges in the appropriate context. It would be exceedingly difficult for witnesses to relay a story without referencing preceding or contemporaneous acts that are incidental but necessary to telling a cogent story, as it relates to the charges the defendant is facing. Thus, defendants are not entitled to a "sanitized" recounting of the facts, 23 C.J.S. *Criminal Law* § 1126, Westlaw (updated June 2015), and prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events, Christopher B. Muller and Laird C. Kirkpatrick, 1 Federal Evidence § 4:33, Westlaw (4th ed., updated June 2015). However, when the desired narrative implicates potential character evidence, which may be problematic under Rule 404(b), the doctrine may easily be abused. Muller and Kirkpatrick, *supra* § 4:33 ("In practice, [the] expanded idea of contextual relevance often paves the way to prove acts that are anything but inseparable from the charged crime, and this label can become a catchall for admitting acts that are far more prejudicial to the defendant than useful in determining guilt of the charged offense."). Therefore, courts must err on the side of caution and impose strict limitations on the admission of potential character evidence that is purportedly being introduced

as "intrinsic" or "background" evidence but is not contemporaneous to the charged incident. The district court in this case abused its discretion by failing to keep in mind both the scope of the charges and the narrow purpose for which the *res gestae* exception exists.

### B. Rule 404(b)

The Rule 404(b) inquiry is closely linked to the analysis above. When the district court decides to allow evidence which appears to implicate other acts that speak to a defendant's character, the court must first consider whether there is a sufficient factual basis that the act occurred; second, whether the act is being offered for an appropriate reason; and third, whether the probative value of the evidence is substantially outweighed by the unfair prejudicial impact of its use at trial. *Adams*, 722 F.3d at 810. Defendant does not contest the occurrence of the highway drive-by shooting. However, as discussed above, it does not appear that the testimony regarding that shooting served any legitimate purpose.

The government contends that the evidence was probative of identity, motive, and plan. But a drive-by shooting that occurred on September 21, 2013 has little to do with Defendant's plan to possess the ammunition that was shot and recovered by the police on August 28, 2013, one month prior. The witnesses' testimony about their own ill deeds—the drug heist—speaks to Defendant's motive for retaliation, generally, but it is unclear how the September 21 retaliation itself speaks to Defendant's motive to commit the retaliation one month earlier. The testimony regarding the threat made on September 19, 2013, could bear on identity because Defendant admitted to the August 28 drive-by shooting, but the incident that occurred a few days later—the shooting itself—does not. The highway drive-by shooting has no probative value (absent if the defense had first opened the door to the testimony by attacking the witnesses' credibility on account of their sudden willingness to come forward about the August shooting after a significant lapse of time). Again, the photographs depicting a bullet-riddled vehicle and the story conveying how the car came to be destroyed can only enflame the jury's passions against the Defendant. The reason that there is little probative value and that the prejudice is unfair in this case is because the story is not necessary with respect to the charged offense.

Although we recognize that the district court is in a much better position to determine the relevance and probative value of evidence, the district court erred in this case by accepting the

government's narrative that these charges related to attempted murder in retaliation for a theft. Defendant was tried separately on charges of murder and attempted murder; the charges in this case are simply about the possession of ammunition. The district court abused its discretion by admitting this evidence for an improper purpose and because its unfair prejudicial effect more than substantially outweighed any probative value of proving that Defendant possessed ammunition that was already spent one month prior.

### III. Harmless Error

As a final matter, we find that the wrongly admitted evidence in this case constituted no more than harmless error because the evidence against Defendant was truly overwhelming. *See Clay*, 667 F.3d at 700 ("[A]n error is harmless unless one can say, with fair assurance that the error materially affected the defendant's substantial rights—that the judgment was substantially swayed by the error." (internal quotation marks omitted)). Godwin, Tisdel, Howell, and McGaughy all testified about the AK-47 that Defendant purportedly carried with him most of the time. Godwin and Tisdel were eye-witnesses to the first shooting, and Godwin and Howell testified that Defendant openly admitted to being one of the shooters. McGaughy and Howell were allegedly friends with Defendant, yet both individuals testified to the September 1, 2013 shooting, where Defendant fired shots at Howell's feet and by Howell's face. Each of the witnesses was able to describe the gun in detail. The government recovered from both crime scenes bullet casings for AK-47 ammunition that was fired from the same weapon. Photographs were introduced showing Defendant holding an AK-47, and Defendant did not contest that he was the man identified in the photographs or that the images were captured only a few weeks prior to the carwash drive-by.

Due to the remarkable depth and directness of the government's evidence against Defendant in this case, Defendant's substantial rights were not impacted by the wrongly admitted evidence; therefore, his conviction will not be overturned. *See* Fed R. Crim. P. 54(a).

### CONCLUSION

For the reasons stated in this opinion, we **AFFIRM** the district court judgment setting forth Defendant's conviction and sentence to a term of 120 months of imprisonment.