NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0075n.06

Case No. 24-1095

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

<table>
<tr><td>UNITED STATES of AMERICA,</td><td>)</td><td></td></tr>
<tr><td>Plaintiff-Appellee,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>ON APPEAL FROM THE UNITED</td></tr>
<tr><td>v.</td><td>)</td><td>STATES DISTRICT COURT FOR</td></tr>
<tr><td></td><td>)</td><td>THE WESTERN DISTRICT OF</td></tr>
<tr><td>MARK CURTIS, JR.,</td><td>)</td><td>MICHIGAN</td></tr>
<tr><td>Defendant-Appellant.</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>OPINION</td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

**FILED**
Feb 10, 2025
KELLY L. STEPHENS, Clerk

Before:  BATCHELDER, BUSH, and BLOOMEKATZ, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**  Mark Curtis appeals his conviction and sentence after a jury found him guilty of being a felon in possession of a firearm.  We AFFIRM.

**I.**

At about 3:00 a.m. on Sunday, September 11, 2022, police officers and paramedics responding to a 911 call found the body of "CC," a 22-year-old man, in an alley behind a house, lying in a pool of blood with an obvious gunshot wound to the abdomen.  He was not armed but there were two spent 5.56-caliber ammunition casings on the ground next to his body, and eight more casings (one 7.62-caliber, five 5.56-caliber, and two .22-caliber) were found on the street around the corner, a block away.[1]  It was later determined that CC had been shot three times, once

---

[1] As the prosecutor explained to the district court: The police "found CC, deceased, behind a shed off of Weld Street.  He had been shot several times, and at least one of his wounds had stippling, indicating that it was from very close range.  All his wounds were through and through, thus no bullets were recovered.  There were two 5.56 caliber casings near his body.  CC had no gun."

from close range and twice from further away.[2] This evidence suggested that (at least) three gunmen shot at CC on the street, striking him, but not fatally. When he fled around the corner, the gunmen apparently pursued him to where his body was found in the alley, where one of the gunmen shot him at close range, killing him.[3]

Information from CC's friends and family led the police to suspect four men as the shooters: Jordan Allen, Earl Austin, Mark Curtis, and Calvin Hill. Also, witnesses said the shooting involved a black 2021 Chevrolet Malibu sedan, which the police traced back to Enterprise Car Rental, and to the renter who told them that Hill had been using the car on the night of the murder. When police located the Malibu, they found a laser sight for a firearm inside it, and two bullet holes in the car's body that had been patched and painted over. A review of the suspects' social media accounts revealed their week-long hunt for CC. Those accounts also had pictures and videos of the four of them together, recorded from September 8 to 10, 2022, in which each was brandishing a firearm. All four were convicted felons and the federal prosecutor charged each with the unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The prosecutor tried three of them (Allen, Curtis, and Hill) to a jury in a joint trial, and the jury convicted them as charged. Because this is Curtis's individual appeal, however, the remainder of this background discussion focuses on Curtis and the evidence specific to his conviction.

---

[2] At sentencing, the district court summarized the evidence: "[CC] had three gunshot wounds to his body. Number two was a wound to his right abdomen. No soot or stippling surrounding the entrance wound, meaning it was done at some distance. Number three [was] a gunshot wound to his left middle finger. Again, no soot or stippling associated with the wound, meaning it was done at a distance. But gunshot wound number one is an execution style wound. To his left lateral neck, multiple gun powder stipple marks surrounding the entrance wound. Somebody stood in close proximity to [CC] and shot him in the neck and killed him. That's what the casings say, and that's what the wounds on his body say. This was a first degree premeditated killing."

[3] At sentencing, the district court summarized the evidence: CC's body was "found in the street where he fled, and there's two more casings there found immediately next to his body where he was clearly executed. And the physical evidence of his body certainly corroborates, again, that this was, in fact, an execution, that this was an intentional premeditated killing."

Curtis's Snapchat account contained several videos. In a video dated September 8, 2022, Curtis was pictured holding a distinctive firearm: a copper-colored MAG Tactical Systems MG-G4, 5.56-caliber assault rifle pistol (ARP) (manufactured in Colorado), with a piece of clear packing tape wrapped around it to secure the loose buffer tube, which functions as the butt end of the gun, like a stock. In that video, with Hill visible in the background, Curtis brandished the firearm and sang: "Like it's a bet for real, boy, you gonna get scratched for real, my loose one's dying to kill, don't play cause we get, we gon' let this go for real . . . I'm the shooter for the gang. . . ." In two videos recorded at 9:02 and 9:04 p.m. on September 10, 2022, about six hours before C.C. was murdered, Curtis was again flaunting the distinctive MAG Tactical ARP for the camera. And two videos recorded at 9:09 p.m. that night showed the MAG Tactical ARP and three other guns laid out on Hill's kitchen table, with the four suspects gathered around the table; in fact, Curtis recorded Austin taking a photograph of the guns with his phone. When the police reviewed that photo from Austin's phone, the picture was so good that they enlarged it to show the clearly legible serial number on the MAG Tactical ARP.

The police used the text communications and location data from the suspects' phones, including from Curtis's Snapchat app, to track their movements on the night of the murder. From this, police determined that the suspects, including Curtis, were searching for CC before the murder, were— just two minutes before the 911 call—within two blocks of where CC's body was found, and were back at Hill's residence for the night just 16 minutes after the 911 call. They also learned that Austin was online trying to sell or trade the MAG Tactical ARP days later.

On September 30, 2022, Austin sold the MAG Tactical ARP to a man named Brian Chisholm, Jr., and the police later seized it from Chisholm pursuant to a warrant. By its appearance, this was the MAG Tactical ARP that Curtis held in the videos recorded on September

3

8 to 10. The police confirmed this by matching its serial number to the number in Austin's photo of the guns on the table, taken on September 10. A ballistics analysis determined that this gun produced five of the seven 5.56-caliber casings recovered at the scene of CC's murder, but was inconclusive as to the other two 5.56-caliber casings.

Prior to trial, Curtis moved to exclude all evidence specific to the murder, arguing that it was unduly prejudicial and irrelevant to the charge of his being a felon in unlawful possession of a firearm. The court denied the motion, finding that *United States v. Peete*, 781 F. App'x 427 (6th Cir. 2019), permitted admission of the homicide evidence as res gestae. But the court gave the jury a limiting instruction, explaining that the defendants "have not been charged with shooting or killing anyone. Accordingly, you may consider evidence related to [CC]'s death only in so far as you determine it to be relevant to the question of whether each defendant possessed a firearm in violation of federal law." The court admitted photos of CC's body (with his face redacted), photos of spent casings on the ground (some of which also showed blood on the ground), and maps showing the location of the casings and CC's body. The court also admitted summaries of the voluminous social media records, and the photos and videos described above, including the audio of Curtis singing the song quoted above. The court said that it was an original composition, apparently created by Curtis, suggesting that made the lyrics relevant. The defendants did not testify or present any defense. The jury returned guilty verdicts.

At sentencing, the court distinguished Curtis from the other defendants because the ballistics evidence established that five of the spent casings at the scene were from Curtis's MAG Tactical ARP, whereas the other casings could not be conclusively connected to the other defendants' firearms or to CC's wounds. Based on this finding, the court applied the Guidelines cross-reference for first-degree murder, U.S.S.G. § 2K2.1(c)(1)(B), to Curtis but not the others.

4

That cross-reference made Curtis's base offense level 43, per U.S.S.G. § 2A1.1(a).  Curtis's criminal history score was eight (seven points plus one for committing this offense while on parole), putting him in category IV.  An offense level of 43 and criminal history of IV produces a Guidelines sentence of life in prison.  But the statutory maximum for a § 922(g) felon-in-possession conviction is 180 months.  18 U.S.C. § 924(a)(8).  The court considered the § 3353 factors and sentenced Curtis to 180 months.

## II.

The jury convicted Curtis under 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. To obtain a conviction under § 922(g)(1), the government had to prove that (1) Curtis had a previous felony conviction, (2) he knowingly possessed the specified firearm, and (3) the firearm traveled in interstate commerce.  *See United States v. Sadler*, 24 F.4th 515, 551 (6th Cir. 2022). Curtis stipulated that he knew he was a convicted felon, and he did not contest the testimony that the gun he allegedly possessed—the MAG Tactical ARP—had traveled in interstate commerce. The issues in this appeal concern the evidence used to prove that he possessed the MAG Tactical ARP, and used to support the Guidelines enhancement that increased his prison sentence for this conviction.

## A.

Curtis argues that the district court abused its discretion by admitting evidence about CC's murder as relevant to the felon-in-possession charge.  Specifically, Curtis contends that Federal Rules of Evidence 401 and 402 barred the homicide evidence because it was irrelevant; Rule 404(b) barred it because it only evinced "other acts" evidence; and Rule 403 barred it because it was inflammatory and its unfair prejudice "substantially outweighed" any probative value.  The district court, however, admitted the homicide evidence a res gestae, pursuant to *United States v.*

*Peete*, 781 F. App'x 427 (6th Cir. 2019).  We review the district court's evidentiary rulings for abuse of discretion.  *United States v. Betro*, 115 F.4th 429, 449 (6th Cir. 2024).

In *Peete*, 781 F. App'x at 430, three witnesses to an apparent gang confrontation saw Peete shoot one man and then attempt to execute a second, but the gun misfired.  When the federal prosecutor charged Peete with a felon-in-possession count, § 922(g)(1),[4] the district court granted Peete's motion to exclude any evidence about the shooting.  *Id*. at 431.  In the government's appeal, Peete argued that any evidence that he shot a man, and later admitted as much, was not needed to prove his mere possession of a firearm, and was inadmissible under Rules 404(b) and 403.  *Id*. at 431-32.  We relied on Rule 404(b)'s exception for res gestae evidence, which we described as "background evidence" that is "necessary to complete the story of the charged offense" and "put the charges in the appropriate context."  *Id*. at 432-33 (quotation marks and citations omitted).  We explained that: (1) "defendants are not entitled to a 'sanitized' recounting of the facts"; (2) "prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events"; and (3) "because jurors may be less willing to credit a witness who is permitted to testify only in a truncated or 'sanitized' manner, prosecutors may present evidence that provides a fuller picture of the charged offense." *Id*. at 433 (quotation marks and citations omitted).  Therefore, the full array of evidence about the shooting was warranted, we said, lest "the jury [] question the credibility of witnesses who would be unable to explain precisely how they observed Peete allegedly possessing a weapon or whether they were sure the firearm was even real." *Id.* at 434.  But we recognized that Rule 403 nonetheless prohibits evidence "if its probative value is substantially outweighed by a danger of unfair

---

[4] The prosecutor also charged Peete with possessing a firearm with an obliterated serial number, 18 U.S.C. § 922(k), but that second count does not affect the *Peete* holding or our analysis, so we omit any further reference to it here.

prejudice." *Id*. at 433 (quotation marks, editorial marks, and citations omitted). In conducting the

Rule 403 analysis, we said:

> [E]vidence that witnesses observed Peete allegedly use the firearm to shoot or
> assault two individuals is highly probative of the charged crime of possession, as
> use of a weapon necessarily shows possession. And while the shooting evidence
> may be prejudicial to Peete's case, it is not unfairly prejudicial as it does not tend
> to suggest decision on an improper basis. Indeed, if a jury were to conclude that
> Peete shot [a man], it would necessarily also determine that Peete possessed the
> weapon; Peete's conviction would not, therefore, be predicated on any improper
> basis but rather on his actual possession of the firearm.

*Id*. at 436-37 (quotation marks, citations, alteration, and footnote omitted). Ultimately, we held

that the evidence of Peete's shooting a man (and attempting to execute another) was "intrinsic" to

the felon-in-possession charge, and its probative value was not substantially outweighed by unfair

prejudice, so the district court abused its discretion by excluding it. *Id*. at 434.

Curtis presses five arguments on appeal as to why the district court's reliance on *Peete* was

misplaced, and that the admission of the homicide evidence was an abuse of discretion. The first

and most emphatic of these arguments is that the evidence of CC's homicide (and Curtis's

involvement) was simply not necessary for the prosecutor to prove the felon-in-possession charge

against Curtis.[5] But this is an argument against res gestae as a concept. To be sure, "background

or res gestae evidence consists of those other acts that are inextricably intertwined with the charged

offense or those acts, the telling of which is necessary to complete the story of the charged

offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). But res gestae evidence is

---

[5] *See*, *e.g*., Curtis's appellate brief, p. 26 ("from a practical standpoint, there was no reason to go beyond 'gun possession' to murder," and "[t]his approach just wasn't required," and "the prosecution could have pursued this case without any reference to the homicide"), p. 28 ("The government could have presented its social-media pictures and videos with no reference to even a shooting."), p. 28 n.3 ("[i]n a felon-in-possession case, a jury would not need to know details about a shooting victim"), p. 32 ("the government's lack of *need* for that evidence to prove its case of firearm *possession*"), p. 36 ("Simply, the homicide evidence was irrelevant. It did not address any elements of the offense of being a felon in possession of a firearm."), reply brief at p. 12 ("the prosecution could have pursued this case without any reference to the homicide . . . [and] could have sanitized without compromising their case"), and p. 13 ("Mr. Curtis has clearly established that the homicide evidence was far from necessary for the government.").

*never necessary* to prove the charged offense; by definition, it is otherwise excludable, and the purpose of the exception is to permit its admission anyway. Thus, we have held that "defendants are not entitled to a 'sanitized' recounting of the facts, and prosecutors are not restricted to proving only discrete elements of a crime in such a way that they would be unable to offer the jury a natural narrative of events." *United States v. Gibbs*, 797 F.3d 416, 424 (6th Cir. 2015) (citations omitted) (relied on in *Peete*, 781 F. App'x at 433). "Moreover, evidence is not rendered extrinsic simply because there is conceivably a way to tell a story without that evidence." *Peete*, 781 F. App'x at 435. Curtis's argument is baseless.

Curtis's next argument is that evidence of the homicide was not res gestae evidence because it was not contemporaneous with his possession of the firearm; because it was not a necessary component of any witness testimony (as was the situation in *Peete*); and because evidence of a "shooting" (without evidence of the murdering) would have satisfied any need that res gestae would justify. It is odd for Curtis to claim that the homicide evidence was not contemporaneous with the felon-in-possession charge when the indictment specifically accused Curtis of possessing the MAG Tactical ARP firearm on the days and hours leading up to and through CC's murder. Regardless, even if this were factually correct, Curtis misunderstands or misrepresents the law. Res gestae is not limited to only evidence of contemporaneous events. Rather, as we have described it, "[p]roper background [or res gestae] evidence has a causal, temporal or spatial connection with the charged offense." *Hardy*, 228 F.3d at 748. Nor is res gestae limited to only evidence that "forms an integral part of a witness's testimony." *See id*. That is certainly one justification for the res-gestae-evidence exception, but not the only one, as we have explained that it may also be "evidence [about the] prelude to the charged offense, [that] is directly

probative of the charged offense, arises from the same events as the charged offense, . . . or completes the story of the charged offense." *Id*. (citation omitted).

Curtis's contention that evidence of the homicide was not res gestae because evidence of a "shooting," without mention of the murder, would have been enough is just a more specific version of his first argument (that the evidence was not necessary), which fares no better now than it did two paragraphs ago. And, whereas other Circuits have allowed the admission of homicide evidence in felon-in-possession cases, s*ee*, *e.g.*, *United States v. Williams*, 445 F.3d 724, 732–33 (4th Cir. 2006); *United States v. Flenoid*, 415 F.3d 974, 976–77 (8th Cir. 2005); *United States v. Mathis*, 778 F. App'x 816, 824-25 (11th Cir. 2019), Curtis has not cited any opinion that has endorsed his argument, or excluded such evidence, as he would have us do here.[6]

Curtis's third argument is that the homicide evidence did not satisfy any of the Rule 404(b)(2) exceptions (i.e., motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident). But this is, again, an argument against res gestae as a concept and, again, it is legally baseless. Res gestae evidence "does not implicate Rule 404(b)." *United States v. Geer*, No. 23-3857, 2024 WL 4564914, at *3 (6th Cir. Oct. 24, 2024) (quotation marks omitted) (quoting *United States v. Martinez*, 430 F.3d 317, 335 (6th Cir. 2005)).

Curtis's fourth argument is that evidence of a homicide is far more prejudicial than evidence of a "shooting," which renders *Peete* distinguishable, and means the court's Rule 403 analysis was wrong, and an abuse of discretion. But given that other Circuits have admitted homicide evidence in felon-in-possession cases (*see Williams*, *Flenoid*, and *Mathis*, cited *supra*),

---

[6] Curtis cited a single opinion, an unpublished district court opinion granting a limine motion in a patent-infringement action, in which the court allowed the defendant to "reference the bare status of the underlying independent [patent-infringement] claims [but] without reference to burdens of proof or standards unique to IPR [i.e., 'inter partes review'] proceedings." *Willis Elec. Co. v. Polygroup Ltd.*, No. 15-cv-3443, 2024 WL 118443, at *3 (D. Minn. Jan. 9, 2024). This odd citation suggests that his argument here has no actual support.

and no Circuit has per se excluded it, even if we accept that *Peete* is technically distinguishable, that does not mean that evidence of a homicide is necessarily impermissibly prejudicial. Under the applicable Rule 403 analysis, evidence of the homicide was admissible unless "its probative value [wa]s substantially outweighed by a danger of . . . unfair prejudice." To be clear, that "unfair prejudice" would be the jury's falsely convicting him of possessing a firearm, based on evidence that he committed the murder but absent evidence that he possessed a firearm. That is certainly not this scenario, in which the evidence was that Curtis *used* the firearm (in his possession) to commit the murder. *See Peete*, 781 F. App'x at 436-37 ("Indeed, if a jury were to conclude that Peete shot [a man], it would necessarily also determine that Peete possessed the weapon; Peete's conviction would not, therefore, be predicated on any improper basis but rather on his actual possession of the firearm."). And the evidence of the homicide was especially probative in this case because Curtis's defense theory at trial (and now on appeal) was that the government had not proven that he possessed a firearm because no witness testified to his possession of a firearm and the pictures and videos merely proved that he possessed something that "resembled" a firearm. Therefore, evidence of the homicide was probative of the fact that this was a real, working firearm. And, as res gestae, evidence of the homicide explained for the jury why the victim did not testify to identify the shooters, and why the police did not interview the victim about the shooters.

Curtis's final argument is that this case is on point with *Gibbs*, 797 F.3d at 418, rather than *Peete*, and, as in *Gibbs*, the district court abused its discretion by admitting the evidence. In *Gibbs*, the prosecutor charged Gibbs as a felon in possession (of ammunition) based on shell casings collected from two shootings (a drive by shooting at a carwash and a separate shooting three days later), for which witnesses testified that Gibbs was the shooter and described the shootings. *Id*. at 419. But the prosecutor also introduced evidence that Gibbs committed a third shooting (a drive

by shooting on the highway) a month later, as res gestae evidence. *Id*. at 420. On appeal, we explained that "[o]utside of cases where the evidence truly provides background information, establishes a nexus between individuals, or completes the story of the charged offense, evidence of separate bad acts occurring on a subsequent date, much later in the timeline relevant to the charged offense, will rarely constitute [res gestae] evidence." *Id*. at 424. And because evidence of "the highway drive-by was not necessary to complete the story of the charged offense," *id.* at 423, nor was it "contemporaneous to the charged incident," that evidence was not res gestae evidence, so the district court abused its discretion by admitting it, *id*. at 425.

The res gestae evidence in the present case (i.e., Curtis's participation in the murder of CC at the exact time of the charged felon-in-possession offense) is analogous to the evidence about the carwash shooting in *Gibbs*, which was properly admitted. There is no reasonable way to equate the evidence in this case with the evidence of the highway shooting in *Gibbs*, which was inadmissible because the two events were unrelated and separated by a month. *See id*. at 424.

Curtis's arguments have no merit. The district court did not abuse its discretion by admitting evidence about CC's murder to prove the felon-in-possession charge against Curtis.

**B.**

Curtis argues that the district court improperly admitted certain evidence, namely a photo of CC's corpse with the face redacted, photos of shell casings with blood splatter on the ground, a summary of the social-media evidence, the audio of Curtis singing his song, several social-media records, and the subject firearms. We review the district court's evidentiary decisions at trial for an abuse of discretion. *United States v. Hall*, 20 F.4th 1085, 1104 (6th Cir. 2022).

Curtis argues that the photos of CC's corpse and the blood splatter were unnecessary to prove the felon-in-possession charge, and were unduly graphic and inflammatory.

The government answers that these photos showed the location of the spent casings (including the five from Curtis's MAG Tactical ARP) relative to CC's body, which was part of the res gestae evidence and proof that the MAG Tactical ARP was a real and working firearm. The government also points to the court's redaction of the photo and limiting instruction to the jury to show that any prejudice from the photos did not "substantially outweigh" their probative value under Rule 403.

Curtis argues that the summary exhibits were not actually summaries of the social-media materials, but were actually an argument of the government's theory of the case. The social-media materials in this trial comprised thousands of pages from nearly 30 separate accounts, including photos, videos, conversations, and time and location data. The government entered all of this material into the record, and created and introduced certain summary exhibits of the relevant portions for presentation to the jury, which were admitted in addition to the underlying documents. *See United States v. Kerley*, 784 F.3d 327, 341 (6th Cir. 2015) (discussing the admissibility of "secondary evidence summaries").

Curtis argues that, in the video in which he held the gun and rapped about his being the killer for his gang, the video alone was sufficient to show his possession of the gun; the audio portion was unnecessary and merely inflammatory. The government answers that the lyrics to this song, which Curtis authored, were probative of his intent to use the gun that he possessed in the video to hunt down and kill CC, thereby showing that he possessed the gun during the relevant time and contradicting his claim that it was not a real or operable gun, but just something that "resembled" a gun. Nor can Curtis demonstrate that any prejudice from the lyrics "substantially outweighed" their probative value under Rule 403.

Curtis argues that social-media records attributed to accomplice, but non-defendant, Austin were unauthenticated (possibly falsified or fabricated), and the statements therein were hearsay. The government answers, correctly, that social-media records—particularly those incriminating to Curtis and discussed herein—*were* authenticated. Moreover, many of the records were self-authenticating, inasmuch as they depicted the defendants, and likewise were non-hearsay statements by the defendants.

Curtis argues that the district court improperly admitted the subject firearms because the police did not seize them directly from the defendants; the police seized them from third parties. Specifically, Curtis contends that the MAG Tactical ARP was inadmissible at trial because the police seized it from Brian Chisholm, Jr., not directly from Curtis. This is, of course, nonsense. The prosecutor proved through the social-media messages, videos, and photos, including the photo depicting the serial number on the MAG Tactical ARP, that Curtis possessed this gun on September 8 to 10. There is no requirement that the police had to catch Curtis with this gun in hand (and seize it directly from him) in order to admit the gun as relevant evidence at his trial.

None of Curtis's arguments is persuasive and none demonstrates any flaw in the district court's analysis of these evidentiary disputes. Curtis simply disagrees with the district court's conclusions. Curtis has not shown that the district court abused its discretion.

## C.

Curtis contends that the evidence was insufficient to prove that he possessed the firearm. Our review is de novo, asking whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In so doing, we view the evidence in the light most favorable to the prosecution, drawing all

reasonable inferences in support of the jury's verdict. *United States v. Chaney*, 921 F.3d 572, 589 (6th Cir. 2019); *accord United States v. Matthews*, 31 F.4th 436, 446 (6th Cir. 2022).

Curtis argues that the evidence was insufficient because "[t]here was *no* testimony that a witness saw Mr. Curtis with a firearm." Appellant Br. at 54. Of course, Curtis offers no case citation or legal support for this suggestion that witness testimony was necessary to sustain the conviction. That is not the law. The prosecutor does not have to produce first-hand witness testimony. The prosecutor does not even have to produce direct evidence. "Circumstantial evidence alone can" be sufficient. *United States v. Bailey*, 973 F.3d 548, 564 (6th Cir. 2020) (editorial marks, quotation marks, and citation omitted); *United States v. Sadler*, 24 F.4th 515, 539, 551 (6th Cir. 2022); *United States v. Brooks*, 987 F.3d 593, 601, 603 (6th Cir. 2021).

Here, the prosecutor produced pictures and videos—that Curtis himself recorded—of Curtis holding the distinctive MAG Tactical ARP. That is sufficient to support the conviction. *See United States v. Munnerlyn*, 202 F. App'x 91, 94 (6th Cir. 2006) ("Although the government did not present the gun used in the robbery, it submitted bank surveillance pictures from the September robbery in which the robber was holding what appears to be a gun while forcing bank employees to place money in a bag."); *United States v. Bowlson*, 148 F. App'x 449, 453 (6th Cir. 2005) ("The gun was visible as well in the banks' surveillance cameras. Thus, the evidence was sufficient to support Bowlson's convictions."). But the prosecutor also produced the actual MAG Tactical ARP, matched it *irrefutably* to the MAG Tactical ARP that Curtis held in the photo (by its serial number as well as its distinct appearance and loose buffer tube), and demonstrated that it was a real, working firearm by matching it (through ballistics analysis) to the spent casings found at the scene of CC's murder. The evidence that Curtis possessed this firearm was overwhelming.

This claim is meritless.

**D.**

Curtis contends that the district court erred by applying the Guidelines cross-reference for first-degree murder, U.S.S.G. § 2K2.1(c)(1)(B), to calculate Curtis's advisory sentencing range. Recall that the court distinguished Curtis from the other defendants because the ballistics evidence established that five of the spent casings at the murder scene were from Curtis's MAG Tactical ARP, whereas the other casings could not be conclusively connected to the other defendants' firearms or to CC's wounds. Considering the totality of the evidence, the court determined, by a preponderance of the evidence, that Curtis murdered CC, and it applied the cross-reference.

Curtis contends that this was both a procedural and a substantive error. "We review substantive-reasonableness and preserved procedural-reasonableness claims for an abuse of discretion." *United States v. Ruiz*, 777 F.3d 315, 319 (6th Cir. 2015). "In the specific context of the cross-reference in U.S.S.G. § 2K2.1(c), . . . we review the district court's factual findings for clear error and accord due deference to the district court's determination that the firearm was used or possessed 'in connection with' another felony, warranting the application of the cross-reference." *United States v. Harris*, 835 F. App'x 94, 97 (6th Cir. 2020). The court's relevant factual findings were that Curtis used the MAG Tactical ARP to murder CC, based on Curtis's possession of that firearm, the location evidence, CC's wounds, and the casings at the scene.

"The cross-reference in § 2K2.1(c)(1) applies where the [prosecutor] shows *by a preponderance of the evidence* [that] 'the defendant used or possessed any firearm . . . in connection with the commission . . . of another offense.'" *Harris*, 835 F. App'x at 97 (emphasis added); *accord United States v. Scheiblich*, 788 F. App'x 305, 309 (6th Cir. 2019); *United States v. Bronaugh*, 895 F.2d 247, 248 (6th Cir. 1990); *cf. United States v. Watts*, 519 U.S. 148, 156 (1997) ("The Guidelines state that it is 'appropriate' that facts relevant to sentencing be proved by

a preponderance of the evidence, USSG § 6A1.3, comment., and we have held that application of the preponderance standard at sentencing generally satisfies due process.").

Curtis contends in a vague and unsupportable way that the district court erred by using the "preponderance of the evidence" standard. *See* Appellant Br. at 60 ("When a sentencing enhancement triggers a marked increase in the applicable sentencing range, sentencing policy favors applying closer scrutiny and a higher standard of proof."). The district court used the preponderance-of-the-evidence standard because that is the governing law in the Sixth Circuit. The district court did not err by adhering to and applying the governing law.

Curtis's second argument is that the evidence was insufficient to prove first-degree murder (i.e., that he intentionally murdered CC). But under the proper standard of review—granting deference to the district court's findings and conclusions, and accepting the factual findings unless clearly erroneous—Curtis comes nowhere close to refuting the district court's findings or conclusions. The district court found from Curtis's possession of the MAG Tactical ARP, the location data, CC's wounds, and the casings at the scene, that Curtis was one of the (four) shooters and most likely the killer. The court further found from the social-media searches and correspondence, that the four men were hunting for CC with the intent to murder him; from Curtis's rap video lyrics, that he saw his role as the killer for the gang; and from the Mag Tactical ARP casings at the scene, that Curtis fired the most shots at CC. Curtis cannot refute any of these findings as clearly erroneous or the conclusions as unreasonable (unworthy of deference), and instead merely insists that the evidence is not persuasive *enough*; that the court could not conclude that he intentionally murdered CC unless it had first-hand witness testimony and identification, or

self-incriminating statements. *See* Appellant Br. at 71-72. This claim, like his insufficiency-of-the-evidence claim, is baseless.[7]

Finally, relying on his contention that the Guidelines range was improperly calculated, Curtis argues that his sentence was substantively unreasonable because the court overvalued the Guideline range and undervalued his "age, relatively petty criminal history, community support, intelligence, and potential for rehabilitation." *See* Appellant Br. at 74. But as established above, the court did not err in calculating Curtis's advisory Guideline range. That range was correct and the court sentenced Curtis within it, making his sentence presumptively reasonable. *See United States v. Ralston*, 110 F.4th 909, 923 (6th Cir. 2024) ("Sentences within the applicable Guidelines range may be considered presumptively reasonable."); *Gall v. United States*, 552 U.S. 38, 51 (2007).

The district court duly considered each of Curtis's mitigating factors. Curtis "really just disagrees with how the [] court balanced the section 3553(a) factors and asks us to rebalance them. But that is simply beyond the scope of our appellate review." *See United States v. Lapaglia*, No. 21-5560, 2022 WL 1024625, at *3 (6th Cir. Apr. 6, 2022) (quotation marks omitted) (citing *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006)); *see also United States v. Wilson*, No. 20-1984, 2021 WL 3017276, at *3 (6th Cir. July 16, 2021) ("Wilson may disagree with the aspects of § 3553(a)(1) that the district court found important, but the decision to weigh those sentencing factors as it did was within its discretion.").

The district court did not abuse its discretion in imposing Curtis's sentence.

---

[7] Nor does the law support any contention that, to invoke the cross-reference, the court had to find that he was the actual killer and not merely an aider, abettor, or facilitator. The sentencing court can apply the first-degree-murder cross-reference to aiders and abettors. *See United States v. Anderson*, 795 F.3d 613, 617 (6th Cir. 2015); *see also United States v. Rishell*, 837 F. App'x 387, 390–91 (6th Cir. 2020).

**III.**

For the forgoing reasons, we AFFIRM the judgment of the district court.